UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CAMERON LACROIX,
  Plaintiff,

v.

CENTRAL INTELLIGENCE AGENCY,
  Defendant.

Civil Action No.
_____

**COMPLAINT FOR RELIEF UNDER THE FREEDOM OF INFORMATION ACT**

Plaintiff Cameron Lacroix, pro se, brings this action against Defendant Central Intelligence Agency ("CIA") under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, and alleges as follows:

**I. INTRODUCTION**

1. This action concerns FOIA Request No. F-2026-00705, submitted on December 23, 2025, seeking CIA records concerning (a) hacking smart televisions, including turning televisions into audio-recording devices; (b) a CIA television studio allegedly used to broadcast staged newscasts; and (c) 965 Church Street in New Bedford, Massachusetts.

2. On June 17, 2026, the CIA issued a Glomar response, stating that it could neither confirm nor deny the existence or nonexistence of responsive records because that fact was allegedly classified and protected as intelligence-sources-and-methods information. Plaintiff believes the words "classified" and phrase "protected as intelligence-sources-and-methods" indicates that the patients he met there were intelligence assets or operatives and that the use of a television to commence a psychological operation was a method. The CIA relied on FOIA Exemptions 1 and 3.

1

3. Plaintiff timely appealed and requested expedited processing based on what he asserted was an imminent threat to his life or physical safety. On August 4, 2026, the CIA acknowledged the appeal but stated that 32 C.F.R. § 1900.42 contained no provision for such a request.

4. Plaintiff seeks judicial review of the Glomar response and, to the extent authorized by FOIA, the CIA's handling of his expedited-processing request.

## II. PARTIES, JURISDICTION, AND VENUE

5. Plaintiff Cameron Lacroix is an individual residing in Massachusetts and is the requester and administrative appellant at issue in this action.

6. Defendant CIA is an agency of the United States subject to FOIA and 32 C.F.R. Part 1900.

7. This Court has jurisdiction under 28 U.S.C. § 1331 and 5 U.S.C. § 552(a)(4)(B). FOIA also provides for judicial review of certain expedited-processing determinations under 5 U.S.C. § 552(a)(6)(E), subject to that subsection's limitations.

8. Venue is proper in this District because Plaintiff resides in Massachusetts.

## III. FACTUAL BACKGROUND

### A. Events Giving Rise to the Request

9. Before submitting the FOIA request, Plaintiff was a patient at an Adult Community Crisis Stabilization facility located at 965 Church Street, New Bedford, Massachusetts, which Plaintiff understands was operated by Child & Family Services.

10. While there, Plaintiff experienced events that caused substantial fear and distress. He perceived certain conversations, television programming, statements concerning medication, and other occurrences as unusually connected to facts about his personal life and history and as resembling coordinated psychological manipulation. Plaintiff alleges these matters as his

2

contemporaneous perceptions and does not allege that a government psychological-warfare operation has already been established as fact.

11. On December 8, 2025, before entering the crisis-stabilization facility, Plaintiff filed a motion in Lacroix v. Leatherman, Civil Action No. 25-cv-13452-ADB. Plaintiff rushed to file because he feared that, if he did not place the matters described there before the Court before entering the facility, something might have happened to him.

12. Later that day, during the intake process at the crisis-stabilization facility, Plaintiff met with a mental-health counselor named Daniel Cashin and noted that he had filed a lawsuit against government agents. Plaintiff was advised that he would be permitted limited use of his cellular telephone on the unit and that the telephone could be kept at the staff desk when not in use. Plaintiff was not asked to surrender the telephone during the intake process and retained possession of it through the evening of December 8, 2025.

13. During the morning of December 9, 2025, the facility director rescinded Plaintiff's cellular-telephone privileges after a staffer saw him using it near the front desk. Plaintiff recalls being informed that the director's supervisor told the director that Plaintiff's possession of a cellular telephone presented a risk to the facility because of his past. Plaintiff then surrendered the telephone, and staff secured it. Plaintiff alleges the statement as he recalls it and does not allege that he personally heard the supervisor make the statement.

14. On or about December 9, 2025, Plaintiff attended a group activity conducted by Nicholas Estrela, a staff member at the crisis-stabilization facility. The activity included an animal-spirit-card reading in which participants drew cards from a deck and Estrela read the associated descriptions aloud.

15. Plaintiff recalls that at least four patients participated in the card reading and that each of those patients received a reading that Plaintiff perceived as negative, ominous, or demonic in character. Plaintiff believed those patients were acting in a covert capacity and perceived the sequence of readings as a coordinated effort to harass or frighten him and to suggest that something bad could happen to him. The card that Plaintiff drew however was positive and uplifting.

16. The December 8 motion stated that Plaintiff had recorded an investigator at his place of work who was an individual named Matthew Dolan. Mr. Dolan discussed sensitive investigations concerning Plaintiff that Plaintiff understood to involve alleged government weaponization and the manufacturing of evidence. Plaintiff further recalls hearing Dolan use the phrase "dead bodies" and he heard him discuss upcoming layoffs which was confidential information.

17. Plaintiff's pending lawsuit, Lacroix v. Leatherman, Civil Action No. 25-cv-13452-ADB, included allegations that individuals acting in an undercover capacity had attempted to set him up on falsified charges. While Plaintiff was at the crisis-stabilization facility, a dark-skinned female patient whom Plaintiff believed was involved in the psychological warfare told him that she was looking for a specific narcotic. Plaintiff told her to speak with her doctor because, if she genuinely needed the medication, she could likely obtain a prescription. Plaintiff perceived the exchange as potentially connected to the allegations in his pending lawsuit which was filed less than a month earlier.

18. On another occasion, while Plaintiff was outside the facility taking a walk, a light-skinned female patient told Candace that Plaintiff was a "chameleon." Plaintiff ignored the remark at the time but perceived it as deliberate harassment directed at him. Plaintiff alleges his

4

perception of the remark and does not allege that the speaker's intent or any alleged covert role has been independently established.

19. On or about December 9, 2025, Plaintiff overheard two patients he knew as Candace and Phil discussing, among other things, that approval was sought for an operation around 2018 which was denied, a building "all the way in the back," followed by a question about whether the building included utilities.

20. The conversation drew Plaintiff's attention because he had lived at 270 Grove Street in Auburndale, Massachusetts, in a building toward the rear of the property. Plaintiff had also identified that residence in Lacroix v. Leatherman, Civil Action No. 25-cv-13452-ADB. Plaintiff perceived the conversation as unusually specific to his circumstances and believed it might have been deliberately structured to affect him psychologically. He does not allege that the conversation alone establishes that Candace or Phil acted for the CIA.

21. Plaintiff also observed a television at the facility displaying what appeared to him to be a staged or fabricated news broadcast with branding resembling a well-known entity. He later requested records concerning an alleged CIA television studio used to broadcast staged newscasts and, separately, records concerning hacking smart televisions and turning televisions into audio-recording devices.

22. Plaintiff further recalls overhearing individuals whom he believed were associated with the CIA discussing changing, substituting, or interfering with his medication but the staff did not do so. Plaintiff understood the statements as threatening serious physical harm or death. He alleges what he recalls hearing and his contemporaneous understanding; the speakers' identities and governmental affiliations have not been independently established.

23.  Before discharge, Plaintiff met with the facility director and requested permission to leave one day early to attend a therapy appointment. The director approved the request. In light of the medication-related statements and other events, Plaintiff believes the early departure was significant to his safety, although he does not allege that the director stated that his life was in danger or that the discharge was intended to protect him from any particular person or agency.

24.  These events explain why Plaintiff sought federal records concerning smart televisions, allegedly staged television broadcasts, and 965 Church Street. Plaintiff does not ask this Court in this FOIA action to determine whether the underlying events constituted psychological warfare or whether any particular individual acted for a federal intelligence agency.

**B. FOIA Request and Glomar Response**

25.  On December 23, 2025, Plaintiff submitted the written FOIA request described above. The CIA assigned Request No. F-2026-00705 and, by letter dated April 16, 2026, acknowledged receipt and stated that it would search for CIA-originated records "on or about" the requested subjects unless Plaintiff objected.

26.  On June 17, 2026, the CIA issued its final response, stating that it could "neither confirm nor deny the existence or nonexistence of records responsive to your request" and that the fact of existence or nonexistence was "currently and properly classified" and constituted intelligence-sources-and-methods information.

27.  The CIA invoked FOIA Exemptions 1 and 3 and cited Section 6 of the CIA Act of 1949 and Section 102A(i)(1) of the National Security Act of 1947. Plaintiff challenges whether the CIA can sustain that categorical response across the full scope of each requested category.

**C. Administrative Appeal and Expedited-Processing Request**

28. Plaintiff timely submitted an administrative appeal on or about July 28, 2026. Although the first page contains an apparent typographical date of July 28, 2028, the accompanying certification was dated July 28, 2026, and the CIA acknowledged receipt on July 28, 2026.

29. The appeal challenged the withholding determination and expressly requested expedited processing due to a "compelling need," stating that Plaintiff believed his life was in danger.

30. CIA regulation 32 C.F.R. § 1900.34(a)(1) recognizes an imminent threat to the life or physical safety of an individual as a basis for compelling need. Section 1900.34(b) also permits the expedited processing of appeals to the Agency Release Panel and it "shall be acted upon expeditiously."

31. On August 4, 2026, the CIA acknowledged Plaintiff's appeal and his request for expedition but stated: "Please be advised that there is no provision in the CIA's Code of Federal Regulations (CFR) (32 CFR § 1900.42) for such a request; therefore, we are unable to assist you further in this matter."

32. The CIA's response did not state that Plaintiff failed to establish compelling need or an imminent threat. Plaintiff alleges that the CIA instead relied on the absence of a regulatory provision without addressing § 1900.34 and therefore failed to apply the governing expedited-processing framework.

33. Plaintiff does not contend that § 1900.34(b) automatically requires expedition of every merits appeal merely because expedition is first requested during that appeal. He contends only that the CIA was required to evaluate his express life-or-safety claim under the applicable expedited-processing framework rather than categorically state that its regulations contained no provision for such a request.

34. Plaintiff recognizes that this incident occurred after the CIA's August 4 letter and does not contend that it was before the Agency when it issued that response. He alleges it only as later support for his contention that his stated safety concerns had not abated.

## IV. CLAIMS FOR RELIEF

### Count I — Improper Glomar Response / Withholding

35. Plaintiff incorporates the preceding allegations.

36. FOIA places the burden on the agency to sustain a withholding. The CIA refused to confirm or deny the existence of records responsive to all three categories of Plaintiff's request and relied on Exemptions 1 and 3.

37. Plaintiff disputes whether acknowledging the existence or nonexistence of responsive records for each requested category would itself reveal information protected by those exemptions.

38. To the extent the CIA cannot justify a Glomar response as to any category or portion of a category, Plaintiff seeks an adequate search and production of all reasonably segregable, nonexempt responsive information.

### Count II — Failure to Apply Expedited-Processing Framework

39. Plaintiff incorporates the preceding allegations.

40. Plaintiff expressly requested expedited processing based on an asserted threat to his life and physical safety, a circumstance recognized by 32 C.F.R. § 1900.34(a)(1) as a basis for compelling need.

41. The CIA did not reject Plaintiff's request for lack of compelling need; it stated that there was no provision in its regulations for the request. Plaintiff alleges that this rationale failed to

8

address § 1900.34, including § 1900.34(b), and therefore did not apply the correct regulatory framework.

42. Plaintiff seeks relief on expedited processing only to the extent such relief remains within this Court's jurisdiction under 5 U.S.C. § 552(a)(6)(E).

## V. EXHAUSTION

43. Plaintiff timely pursued an administrative appeal, which the CIA acknowledged receiving on July 28, 2026.

44. Plaintiff invokes judicial review to the extent administrative remedies have been exhausted or constructively exhausted as of the filing of this action and reserves the right to supplement these allegations to reflect a later final Agency Release Panel decision or a failure to act within the time permitted by FOIA.

## VI. PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that this Court:

A. Assume jurisdiction over this action;

B. Declare that Defendant bears the burden of establishing the legality of its refusal to confirm or deny the existence of responsive records;

C. Require Defendant to provide declarations, affidavits, indexes, or other evidence sufficient to permit meaningful judicial review of the asserted exemptions;

D. Conduct in camera review where necessary and authorized by law;

E. Order Defendant to conduct an adequate search if the Court determines that a Glomar response is not permissible as to any portion of the request;

F. Order Defendant to produce all responsive, reasonably segregable, nonexempt records;

9

G. Declare, to the extent the Court has jurisdiction, that qualifying requests asserting an imminent threat to life or physical safety must be evaluated under FOIA and 32 C.F.R. § 1900.34;

H. Order such further administrative processing as is permitted by law;

I. Award Plaintiff recoverable litigation costs if Plaintiff substantially prevails;

J. Retain jurisdiction as appropriate to ensure compliance with the Court's orders; and

K. Grant such other and further relief as the Court deems just and proper.

Respectfully submitted,
Dated: August 12, 2026

**CAMERON LACROIX**

Pro Se Plaintiff
PO Box 620144
Newton, MA 02462
Telephone: 617-539-6662
cameronlacroix@proton.me

10

## CERTIFICATE OF SERVICE

I hereby certify that this document will be mailed to the Central Intelligence Agency at the address below.

Litigation Division
Office of General Counsel
Central Intelligence Agency
Washington, DC 20505

Cameron Lacroix, Pro, Se

11